## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James F. Hanson, | Civil No. 06-2181 (DWF/RLE) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| United Rentals, Inc., | |
| Defendant. | |

_____

Robert C. Maki, Esq., and Shawn B. Reed, Esq., Maki & Overom Chartered, counsel for Plaintiff.

Marko J. Mrkonich, Esq., and Sandro M. Garofalo, Esq., Littler Mendelson, PC, counsel for Defendant.

_____

## INTRODUCTION

This matter came before the Court on September 14, 2007, pursuant to a Motion for Summary Judgment brought by Defendant United Rentals, Inc. ("United Rentals"). In his Complaint, Plaintiff James Hanson asserts causes of action for breach of contract, failure to respond to a request for reason for termination in violation of Minn. Stat. § 181.935, and failure to respond to a demand for payment in violation of Minn. Stat. § 181.13. For the reasons stated below, United Rentals' Motion for Summary Judgment is granted in part and denied in part.

**BACKGROUND**

In March 2006, Hanson was employed at United Rentals' office in northern Minnesota as an assistant branch manager. Hanson reported directly to branch manager, Mark Wegehaupt, who in turn reported to district manager, Allen Bower. Mark Albers was United Rentals' Regional Human Resources Manager.

Hanson did not have a written employment contract with United Rentals. In fact, United Rentals' Employee Handbook included the following provisions:

> United Rentals is an "at-will" employer and, as such, employment with United Rentals is not for a fixed term or definite period and may be terminated at the will of either party, with or without cause, and without prior notice.

(Affidavit of Sandro M. Garofalo ("Garofalo Aff.") ¶ 2, Ex. A ("Hanson Dep.") at Ex. 2, UR/Hanson000035.)

> Nothing in this Handbook creates a promise of future benefits or a binding contract.

(*Id.*)

> UNITED RENTALS IS AN AT-WILL EMPLOYER, THIS MEANS THAT REGARDLESS OF ANY PROVISION IN THIS HANDBOOK, EITHER YOU OR THE COMPANY MAY TERMINATE THE EMPLOYMENT RELATIONSHIP AT ANY TIME, FOR ANY REASON, WITH OR WITHOUT CAUSE OR NOTICE. NOTHING IN THIS HANDBOOK OR IN ANY DOCUMENT OR STATEMENT, WRITTEN OR ORAL, SHALL LIMIT THE RIGHT TO TERMINATE EMPLOYMENT AT WILL. NO OFFICER, EMPLOYEE OR REPRESENTATIVE OF THE COMPANY IS AUTHORIZED TO ENTER INTO AN AGREEMENT – EXPRESS OR IMPLIED – WITH ANY EMPLOYEE FOR EMPLOYMENT OTHER THAN AT-WILL UNLESS THAT AGREEMENT IS IN A WRITTEN CONTRACT SIGNED BY

>    THE CHIEF EXECUTIVE OFFICER OR PRESIDENT OF THE
>    COMPANY.

(*Id*. at UR/Hanson000037 (emphasis in original).)

>    The policies, procedures, practices and benefits described in this Handbook
>    may be changed or discontinued.

(*Id.*)

>    United Rentals is an at-will employer.  This means that regardless of any
>    provision in this Handbook, either you or the company may terminate the
>    employment relationship at any time, for any reason, with or without cause
>    or notice.  Nothing in this Handbook or in any document or statement,
>    written or oral, shall limit the right to terminate employment at will.  No
>    officer, employee or representative of the company is authorized to enter
>    into an agreement – express or implied – with any employee for
>    employment other than at-will unless that agreement is in a written contract
>    signed by the chief executive officer or president of the company.

(*Id.* at UR/Hanson000061.)

On or about March 1, 2006, Wegehaupt presented Hanson with an Employment Agreement that contained a non-compete provision. (Hanson Dep. Ex. 4 (the "Employment Agreement").)  Hanson told Wegehaupt that he needed time to review the Employment Agreement.  After contacting his attorney the following day, Hanson notified Wegehaupt that he objected to several provisions of the Employment Agreement and that he believed it was not supported by adequate consideration.  Hanson also told Wegehaupt that he would not sign the Employment Agreement.

Wegehaupt shared Hanson's concerns with Albers.  On Friday, March 10, 2006, Albers contacted Hanson by telephone to discuss the Employment Agreement.  At that time, Albers offered to revise the Employment Agreement to include a twelve-month

salary continuation in the event that Hanson was terminated from his employment without cause. Hanson indicated that he would need to see the revision and consult with his attorney. Albers told Hanson that Hanson would need to get back to him by 5:00 p.m. that day.

At approximately 4:30 p.m. that day, Hanson called Albers and stated that he could not reach his attorney and that he needed additional time to consider the proposal. In response, Albers told Hanson that Hanson was going to be placed on a "leave of absence" and that the matter needed to be resolved by Monday, March 13, 2006. According to Hanson, Albers told Hanson that if he failed to sign the Employment Agreement by the end of the day on March 13, Hanson was "done." (Hanson Dep. at 65, 70.) Following this conversation, Albers sent an e-mail to Bower and Wegehaupt that stated:

> Jim Hanson just called me. He informed me that he has not talked to his attorney. Therefore, he cannot give me an answer today.
>
> Jim was informed that he cannot return to work until the issue is resolved. This will be considered a "leave of absence." He has until Monday, close of business to give us a decision. If he is not signed up by Monday, close of business, Jim will no longer be employed by the Company.
>
> . . .
>
> PS: Mark, when he comes in Monday to sign, the attached agreement is the one that you should use.

(Affidavit of Shawn B. Reed in Opp. of Mot. for Summ. J. ("Reed Aff.") ¶ 4, Ex. 10.) Ablers attached a copy of a revised Employment Agreement (the "revised Employment Agreement") in his e-mail.

On March 13, 2006, Wegehaupt forwarded the revised Employment Agreement to Hanson via e-mail, along with the March 10, 2006 e-mail message that had been sent from Albers to Bower and Wegehaupt. The revised Employment Agreement contained a provision allowing Hanson to receive a twelve-month salary continuation at eighty percent of his salary in the event of termination without cause. (Hanson Dep. at Ex. 9.) Hanson objected to the salary continuation provision, as he expected the salary continuation at 100 percent of his salary, not the 80 percent that appeared in the revised Employment Agreement. (Hanson Dep. at 71.) As a result of his concerns, Hanson did not sign the revised Employment Agreement on March 13, nor did he come to work that day. However, in his deposition, Hanson agreed that although he did not find the Employment Agreement acceptable at that time, he was still willing to negotiate with the company to reach an agreement. (*Id*. at 76.)

On March 13, 2006, Albers sent an e-mail to Wegehaupt that stated:

He gets paid through last friday [sic].

If he did not come in and sign the agreement today, he does not get paid.

If he does not sign by tonight, he is terminated.

(Reed Aff. at Ex. 12.)

On Wednesday, March 15, 2006, Albers contacted Hanson to discuss the revised Employment Agreement. Hanson testified that Albers "[w]anted to know about why I wouldn't sign and what my concerns were." (Hanson Dep. at 77.) Hanson testified that he told Albers that he [Hanson] felt that he had been terminated as of March 13. (*Id*.)

5

Yet Hanson further testified that the reason that Albers called him on March 15 was that the company was "[h]oping that I would sign this thing and stay employed so that they didn't have to worry about legal ramifications." (*Id*. at 111.)

After Hanson and Albers spoke on March 15, Wegehaupt contacted Hanson to tell him that Albers was offering an additional $250.00 signing bonus in exchange for signing the revised Employment Agreement. (*Id*. at 82-83.) Hanson did not accept that offer.

Hanson asserts that on March 17, 2006, after telling Wegehaupt of his decision not to sign the revised Employment Agreement, Hanson asked for his final pay. (*Id*. at 203.) In addition, Hanson submitted a letter to United Rentals on March 17, 2006, requesting the reason for the termination of his employment. (Complaint at Ex. A.)

## DISCUSSION

**I.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   Breach of Contract

Hanson contends that United Rentals breached an agreement by terminating Hanson after Hanson pointed out issues with the Employment Agreement. In support of his position, Hanson relies on certain provisions of the Employee Handbook, including:

> Immediate Dismissals – Misconduct
> Any employee whose conduct, actions or performance violates or conflicts with United Rentals' policies, including the company's Employee Rules and Regulations, may be terminated immediately and without warning.

(Hanson Dep. Ex. 2 at UR/Hanson000062 (listing examples of grounds for immediate dismissal).) Hanson asserts that pursuant to this provision, Hanson could not be terminated for failing to sign a non-compete agreement. In addition, Hanson points to a provision in the Employee Handbook regarding the process by which an employee should resolve problems at United Rentals. (*Id*. at UR/Hanson000057.) Although his argument is not a model in clarity, Hanson appears to assert that United Rentals breached this provision by not bringing the issues to Hanson's attention for dispute resolution.

The Court finds no merit to Hanson's breach of contract claim. Hanson fails to recognize that the Employee Handbook specifically disclaims the formation of a binding contract. Specifically, the Employee Handbook stated:

> This list is representative of the types of activities that may result in disciplinary action or dismissal. It is not an all-inclusive list and does not change the employment-at-will relationship between you and the company.

(*Id*. at UR/Hanson000063.) Under Minnesota law, an employee is precluded from claiming contract rights under a handbook that expressly disclaims the creation of such a

binding contract. *Landers v. Nat'l R.R. Passenger Corp.*, 345 F.3d 669, 674 (8th Cir. 2003) (citing *Feges v. Perkins Restaurants*, 483 N.W.2d 701, 701 (Minn. 1992)). Here, the Employee Handbook expressly disclaimed the creation of a binding contract and expressly specified that Hanson was an at-will employee. As a result, Hanson is precluded from asserting the existence of a contract based on the Employment Handbook. Moreover, the Court finds no merit to Hanson's assertions regarding the problem-resolution process. As a result, Hanson's breach of contract claim fails as a matter of law.

### III.   Statutory Claims

United Rentals has also moved for summary judgment on Hanson's claims brought pursuant to Minn. Stat. §§ 181.13 and 181.933. Section 181.13 provides, in relevant part:

> When an employer employing labor within this state discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee. If the employee's earned wages and commissions are not paid within 24 hours after demand, whether the employment was by the day, hour, week, month, or piece or by commissions, the employer is in default.

Minn. Stat. § 181.13. Section 181.933 provides:

> An employee who has been involuntarily terminated may, within 15 working days following such termination, request in writing that the employer inform the employee of the reason for the termination. Within ten working days following receipt of such request, an employer shall inform the terminated employee in writing of the truthful reason for the termination.

Minn. Stat. § 181.933, subd. 1. Minn. Stat. § 181.935(b) allows for a civil penalty for violations of § 181.933. United Rentals contends that Hanson cannot establish a claim for

9

violation of these statutes because United Rentals did not discharge Hanson. Instead, United Rentals contends that Hanson voluntarily terminated his own employment.

The Court finds that a genuine issue of material fact exists as to whether United Rentals discharged Hanson or if Hanson voluntarily terminated his employment with the company. Based on the evidence before the Court, including Hanson's testimony regarding the phone conversation between Hanson and Albers and the e-mails exchanged among Albers, Wegehaupt, and Bower, a reasonable jury could conclude that Hanson was terminated from his employment. As a result, summary judgment is inappropriate on these claims.

## CONCLUSION

Hanson's responsive memorandum raises various issues as to whether adequate consideration supported the Employment Agreement that United Rentals offered to Hanson. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 8-12.) Because Hanson never signed the Employment Agreement, the Court need not address these issues.

With the relatively minimal issues remaining in the case, the Court believes that it may be in the best interest of the parties to resolve this matter without the expense of further litigation. The Court suggests that the parties contact Vicki Miller, Calendar Clerk to Chief Magistrate Judge Raymond L. Erickson, at (218) 529-3520, to schedule a settlement conference.

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Defendant United Rentals' Motion for Summary Judgment (Doc. No. 25) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. Defendant United Rentals' Motion is **GRANTED** as to Plaintiff's breach of contract claim (Count II). Therefore, Count II of the Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

   b. Defendant United Rentals' Motion is **DENIED** as to Plaintiff's claims regarding violations of Minn. Stat. §§ 181.935 and 181.13.

Dated: October 15, 2007         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court